Argued and submitted November 19, 2002, affirmed June 5, 2003

STATE OF OREGON,
*Appellant,*

*v.*

STEVEN CRAIG JOHNSTON,
*Respondent.*

TF0021720; A114039

69 P3d 1270

Doug M. Petrina, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

No appearance for respondent Steven Craig Johnston.

Ryan Scott argued the cause and filed the brief for *amicus curiae* Metropolitan Public Defenders, Inc., and Oregon Criminal Defense Lawyers Association.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Defendant was convicted of misdemeanor driving under the influence of intoxicants (DUII) six times between 1981 and February 17, 2000. This case is the state's appeal from the sentence that the trial court imposed on defendant after he was convicted of a seventh DUII on March 26, 2001. The court held that the sentence urged by the state (and agreed to by defendant as part of a plea agreement) would punish defendant twice for his earlier convictions: once when they were used to elevate his crime from a misdemeanor to a felony and again when they were used to increase his "criminal history" score. Because at trial the state did not object to the sentence with sufficient clarity or specificity, we decline to address its argument on appeal. We therefore affirm.

In November 2000, defendant was arrested for DUII, burglary, criminal trespass, and theft. After extensive negotiations, the state agreed to dismiss all charges except the DUII, and defendant agreed to "plead guilty to Felony Driving Under the Influence of Intoxicants, as 6-A on guidelines grid." Under that agreement, defendant would have received a presumptive sentence of between 25 and 30 months. Instead, however, the trial court imposed a sentence of 16 months. On appeal, the state maintains that in doing so the trial court erred.

The arguments in this case are based on the sentencing guidelines grid, defined in OAR 213-004-0001:

"(1) The sentencing guidelines grid is a two-dimensional classification tool. The vertical axis is the Crime Seriousness Scale which classifies current crimes of conviction. The horizontal axis is the Criminal History Scale which classifies criminal histories.

"(2) Each grid block states the presumptive sentence for an offender whose crime of conviction places him or her in that grid block."

The trial court's sentencing decision and *amicus*'s argument on behalf of defendant[1] before this court derive from the relationship between the grid and two DUII statutes. According

---

[1] The parties and this court read the plea agreement to preclude defendant from appealing his sentence and from responding to the state's appeal. For that

to *amicus*, sentencing defendant to a term within the 6-A grid block would punish him two times for his prior DUII convictions, in violation of state and federal guarantees against double jeopardy.[2] First, the convictions would elevate him on the vertical "crime seriousness" axis by changing "ordinary DUII," a Class A misdemeanor, ORS 813.010(4), into "felony DUII" by operation of ORS 813.010(5), under which DUII is a felony "if the defendant has been convicted of [DUII] * * * at least three times in the 10 years prior to the date of the current offense." In addition, according to the *amicus*, the prior DUII convictions would be used to give defendant a higher criminal history score on the horizontal axis of the grid. A person with three or more prior convictions for "person felonies" is in Category A, the category on the horizontal axis with the longest terms of incarceration. OAR 213-004-0007. ORS 813.012(2) provides that, for purposes of calculating the sentence of a person convicted of felony DUII, every two prior convictions of misdemeanor DUII count as one conviction for a person felony. Thus, defendant's six prior misdemeanor DUIIs would count as three person felonies and put his criminal history score in Category A.

When the parties appeared before the trial court to enter a plea pursuant to the agreement, the court, on its own, expressed doubts as to the legality of using the four DUII convictions from the previous 10 years both to elevate the crime from a misdemeanor to a felony under ORS 813.010 and also to increase defendant's criminal history score under ORS 813.012(2). The following exchange ensued between the trial court, the prosecutor, and defense counsel. We set it out at length because the disposition of this case depends on what, exactly, the dialogue encompassed:

"[Prosecutor]:  I believe the Court has a copy of the felony sentencing guidelines report that I prepared showing the defendant to be a 6-A on the guidelines grid. * * * [T]he

---

reason, defendant did not submit a respondent's brief or appear at oral argument. His position was, however, briefed and argued by *amicus curiae* Metropolitan Public Defenders.

[2] Article I, section 12, of the Oregon Constitution provides, in part, "No person shall be put in jeopardy twice for the same offence." The Fifth Amendment to the United States Constitution provides, in part, "No person shall be * * * subject for the same offence to be twice put in jeopardy of life or limb."

legislature recognizes the seriousness of DUII, and the fact that for the crime seriousness ranking of a felony DUII, for purposes of computing their criminal history, two DUII convictions, previous convictions, equal one person felony, and as you can see, Mr. Johnston has six total DUII convictions, placing him as an 'A' on the guidelines grid. * * *

"[Trial Court]: I take it that there have been cases ruling that the DUIIs can be—that are used to enhance the DUII to the felony status can also be used to enhance the sentencing?

"[Prosecutor]: Well, the way the—

"[Trial Court]: I take it—you're agreed that it's under 'A,' but it seems to me that normally you wouldn't consider—couldn't consider something that was used to increase it to the status to then turn around and use that as part of the guide—do you understand what I'm—

"[Prosecutor]: I understand what you're saying, however—

"[Trial Court]: Because I'm not sure you're—reading that statute, I don't think it says that either way, and that's why I wonder have there been any cases that have ruled that.

"[Prosecutor]: Right. You know, I have not found any cases looking up that particular issue, although, it seems to me when I read the statute that it seemed fairly clear that it just flat out says in computing their criminal history for this particular thing—

"[Trial Court]: No. It's not for this particular thing, it's for computing their sentencing guideline, whatever they are charged, isn't it?

"* * * * *

"[Trial Court]: [C]an you use the DUIIs that you've alleged to make this DU—what would be just a DUII a felony as part of those enhancement? It seems to me like there were older cases relating or not to this sort of a thing that says that you can't use the items that you're using—going to use to aggravate the individual offense as aggravating factors under the guideline. Do you see what I mean? When I say—if you're going to say—if it's a type of felony where in

order for it to be that sort of a felony there has to be personal injury costs, then you can't turn around and say hey, here's an aggravating factor causing personal injury, see, because they're all one and the same.

"[Prosecutor]: I guess I understand what the Court is addressing, although, I guess we would—

"[Trial Court]: See, otherwise any time you have a felony Driving While Suspended—every time you have a felony DUII sentencing you have at least one person felony, because they've got to have at least three DUIIs—

"[Prosecutor]: Right. That's correct.

"[Trial Court]: They've got to have three DUIIs, so they probably have two—you know, two person felonies normally by the time they get there to this felony Driving Under the Influence. I mean, I'm not—I recognize what the legislature was intending and attempting to do, but I don't know for sure—I mean, they don't, to me at least, clearly say that this is what they wanted to do as far as making it that aggravating factor, so I'm assuming that there must have been a case on it or a ruling somewhere on it that says that you can double hit them.

"[Prosecutor]: Well, I, quite frankly, do not have any research on that issue, and if, you know, that's something that the Court would like, we can, you know, set this over until we have that issue resolved.

"[Trial Court]: Well, I think maybe by your agreement you have resolved it, but I'm just raising the question, and in my mind—go ahead with—

"[Prosecutor]: I guess the way the State reads the statute, that is not what—the way it reads. And it seems like they could have excluded or—anyway, that's the way the State's reading the statute, is that it is all prior DUII convictions.

"[Trial Court]: Right. And that except for that situation, you know, I—I'm sure there are cases that say if you use something to enhance a crime, you know, its status, then you can't turn around and use that as an aggravating factor in the guidelines.

"[Prosecutor]: Quite frankly, I didn't even have that question come up in my mind in terms of being able to use

that as part of his criminal history and had run this case by several people in the office. So, you know, if the Court doesn't feel comfortable with that, you know, we can go ahead and research that issue, but I didn't come across anything in looking at that statute that would have tipped me off to that."

The prosecutor went on to discuss other matters in the case and concluded by "ask[ing] that the Court impose a 25-month prison sentence, as the legislature has mandated."

Defense counsel then addressed the court and stated:

"[Defense counsel]: When I first got the case my inclination toward this was the same thing as your Honor had mentioned about this, a double whammy here for using these cases from the olden days to bolster this case, and then to also use them for the sentencing guidelines delineation, and, frankly, because this law is so new I don't think we really have any cases that've made it through the Court of Appeals or anybody yet. * * * I think your Honor's points are well taken, and we do need to argue this at some point."

Defense counsel then urged the court to impose a "downward departure," that is, to impose a sentence that is shorter than the minimum for the appropriate grid block. Ultimately, the court ruled as follows:

"Well, I am not satisfied that there is sufficient substantial and compelling reasons to grant the departure requested by the defendant. * * * But by the same token, I do not feel that I can legitimately use the DUII convictions used to enhance this to felony status under the guidelines as aggravating matters of the grid block. [Defense counsel], I understand, is not free to make that argument under the stipulation that was entered into for the reasons that she stated.

"I will make a sufficient finding to make a durational departure down to the 'C' category, 6-C, and I will commit the defendant to the legal and physical custody of the State Department of Corrections for a period of 16 months. * * *

"Do you have any questions, [prosecutor], on what I'm doing?

"[Prosecutor]:    No. That's fine. If we could have up to 30 days to submit that information for the restitution?

"[Trial Court]:    You may prepare the judgment."

The court went on to address defendant. The prosecutor then asked the court a question related to the driver's license suspension, and the proceedings concluded. At no time after the court announced the sentence did the prosecutor object to the sentence. In fact, when asked if she had any questions, she replied, "No. That's fine." The state-prepared judgment imposed a sentence of 16 months' incarceration followed by 24 months of post-prison supervision.

On appeal, the state contends that the relevant statutes and rules required the trial court to place defendant in grid block 6-A, where the presumptive term of incarceration is 25 to 30 months. *Amicus* does not disagree, but, as previously discussed, argues that the sentencing scheme as applied to defendant violates constitutional guarantees against double jeopardy by punishing him two times for each of his DUII convictions by using those convictions to enhance both the crime seriousness of his current offense and his criminal history. In reply, the state contends that the sentencing scheme is constitutional.

We are unwilling to resolve the issue that the parties frame. That is so because at trial the state failed to "indicate the basis of the objection with specificity." *State v. Brown*, 132 Or App 443, 447, 888 P2d 1071, *rev den*, 321 Or 137 (1995); *State v. Orsi / Gauthier*, 108 Or App 176, 180, 813 P2d 82 (1991).[3] From the record before us, we can infer only that, after the trial court, on its own, raised the double jeopardy issue, the state offered to conduct further research. Defendant, however, urged the court to apply a "downward departure." The trial court then announced that it did not find sufficient basis "to grant the departure requested by the defendant" but nonetheless stated that it would "make a sufficient finding to make a durational departure down to the 'C'

---

[3] We have recognized an exception to this general rule when a party fails to object to a *sua sponte* ruling by the trial court. *State v. DeCamp*, 158 Or App 238, 241, 973 P2d 922 (1999). The reasoning in that case, however, does not apply here; the party that did not promptly object was not present when the allegedly objectionable ruling occurred.

category, 6-C." That statement is ambiguous. If the court held that defendant's sentence was within the range stated in the 6-C grid block, then it was not a "departure," that is, it was not a sentence outside of the presumptive range for that grid block (15-18 months). If the sentence was a "departure," then it was a departure from the presumptive minimum in the 6-A grid block (25 months), and our review would be limited to evaluating the sufficiency of "the sentencing court's findings of fact and reasons justifying a departure." ORS 138.222(3). However, instead of offering a precise objection that would have presented the trial court with the opportunity to make an informed judgment and, if necessary, correct its alleged error, the state responded to the court's direct question, "Do you have any questions * * * on what I'm doing?" by saying only, "No. That's fine." That response not only failed to allow the trial court to respond, it failed even to alert it (or defendant) that a response was necessary. We therefore will not deal with the issue on appeal. *State v. Wyatt*, 331 Or 335, 341-43, 15 P3d 22 (2000).

Affirmed.